IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KAMERON KENNETH WIDDOES, :
:
        Plaintiff, :
:
   v. : Civ. No. 12-1255-RGA
:
P. MALONE, et al., :
:
        Defendants. :

---

Kameron Kenneth Widdoes, Wilmington, Delaware; *Pro Se* Plaintiff.

Wilson B. Davis, Assistant County Attorney, New Castle County Office of Law, New Castle, Delaware; Counsel for Defendants.

**MEMORANDUM OPINION**

November 1, 2013
Wilmington, Delaware

*Richard G. Andrews*
ANDREWS, U.S. District Judge:

Plaintiff Kameron Kenneth Widdoes, who appears *pro se*, filed this action in the Superior Court for the State of Delaware in and for New Castle County alleging violations of his constitutional rights due to excessive force. Defendants removed the case to this court on October 2, 2012. (D.I. 1.) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the court is Defendants' motion for summary judgment. (D.I. 17)

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. See *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); see also *Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If

the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendants move for summary judgment on the grounds that: (1) 42 U.S.C. § 1983 does not permit an action against an animal; (2) the claims against the unnamed officers, Detective Sherkey, and Sergeant Malone are insufficient as a matter of law; (3) the claims of excessive force are baseless; (4) qualified immunity is appropriate; (5) the Eighth Amendment is inapplicable; and (6) the demand for punitive damages is inappropriate. (D.I. 20). Plaintiff did not respond to the motion. The Plaintiff was then advised that he would be given more time, but that if he did not file anything, the motion would be decided on the Defendants' papers. (D.I. 28). Plaintiff submitted nothing in response. The Court will grant summary judgment, but only after considering the merits of Defendants' unopposed motion. See *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

The complaint names as defendants New Castle County Police Department Staff Sergeant P. Malone and Detective Sherkey, an unnamed K-9, and unnamed New Castle County police officers. The record reflects that on October 5, 2011, a homeowner reported the burglary of his residence to the New Castle County Police Department. Sherkey reported to the scene and spoke with the homeowner who stated ammunition had been stolen from his residence. (D.I. 20, exs. A, B.) Sherkey lifted a fingerprint from the scene, which was later matched to Plaintiff. (*Id.* at ex. A.) Sherkey was aware that Plaintiff was linked to selling items at local pawn shops in New Castle

County. He determined that there was probable cause that Plaintiff committed the burglary, obtained an arrest warrant for Plaintiff, and began searching for him. (*Id.*)

Through its investigation, the New Castle County Police Department determined that Plaintiff was in a relationship with Fallon Gilbert and that she resided in Wilmington. (*Id.* at ex. C.) On October 11, 2011, Gilbert was at her residence in Wilmington. (*Id.*) Malone and Officer C. Allen were notified by Detective Dolan of Gilbert's presence, and they went to the property. (*Id.*) Once they arrived, Dolan approached the rear of the property where Gilbert had previously entered and knocked on the door. (*Id.*) When Gilbert answered the door, Dolan questioned her about Plaintiff, and Gilbert stated that she did not know where he was. (*Id.*) Dolan asked Gilbert to put the dogs in the front of her property, and she complied with the request, but did not immediately return to the rear door. (*Id.*)

At that point, Malone shouted for Gilbert and Plaintiff to come to the back door. (*Id.* at ex. B.) Gilbert returned to the rear door after two minutes and, upon questioning, stated that Plaintiff had fled through a window. (*Id.*) She stated that Plaintiff was hiding in the garage that was accessible through the basement of the residence. (*Id.* at exs. B, C.)

Additional New Castle County Police Department officers responded to the scene, including Corporal Joseph Rago and his canine partner, Dayan. (*Id.* at ex. C.) The police officers were concerned for their safety because they were aware that ammunition had been stolen from the residence Plaintiff was suspected of burglarizing. (*Id.* at ex. B.) Rago gave several canine commands, first at the rear of the residence

3

and then at the top of the basement steps, wherein he yelled, "County Police K-9 come out now or I will send the dog in and you will be bit." (*Id.* at exs. B, D.) Rago did not hear anyone respond. (*Id.*) Upon hearing the commands, Plaintiff panicked and hid in a laundry room closet and placed a blanket over his head. (D.I. 1, complaint.) Rago went down the basement stairs and gave two more canine announcements. (D.I. 20, exs. B, D.) Rago conducted a search with Dayan, whose change in breathing indicated that someone was present in the basement storage room. (*Id.* at ex. D.)

Dayan lunged at pile of blankets and bit them. (*Id.* at ex. D.) Because of safety concerns, Rago retreated to cover with Dayan to ensure their safety and again made a canine announcement. (*Id.* ex. D.) There was no response to the announcement, and Rago sent Dayan back into the room. (*Id.* at ex. D.) Dayan again bit the pile of blankets and Rago heard a scream. (*Id.*) Rago gave loud and clear commands for Plaintiff to show himself, but Plaintiff did not follow the commands. (*Id.*) Rago ordered Dayan to hold Plaintiff until Rago could clearly see Plaintiff's hands. (*Id.*) Rago then pulled Dayan back and away from Plaintiff. (*Id.* at exs, B, D.)

Plaintiff was still partially covered by the blanket when Malone entered the room. (*Id.* at exs, B, D, E.) Malone attempted to pull Plaintiff's hand out to gain control of him and cuff him, but Plaintiff pulled his right hand back and placed it back under the blanket. (*Id.* at ex. B.) Malone did not know what was under the blanket and was concerned for his safety. (*Id.*) Malone told Plaintiff to give him his right hand, and struck him in the ribs twice when he refused to follow the command. (*Id.*) Allen entered the room and assisted the arrest by placing his knee on Plaintiff's back and grabbing

4

Plaintiff's right wrist. (*Id.* at exs. B, E.) Gilbert, Plaintiff's girlfriend, did not witness any officers tase Plaintiff or hit him with a baton or club. (*Id.* at ex. F.)

Allen saw that Plaintiff had been bitten on the ear by Dayan during the arrest, and he requested that an ambulance come to the scene. (*Id.* at ex. E.) An ambulance arrived to take Plaintiff to the hospital after which Malone, Dolan, Rago, and Allen had no further contact with Plaintiff. (*Id.* at exs. B-E.) Sherkey arrived on scene as Plaintiff was being transported to the Christiana Medical Center. (*Id.* at ex. A.) Plaintiff was interviewed later that day. He waived his Miranda rights and admitted to burglarizing the residence that Sherkey had investigated, as well as another residence in New Castle County. (*Id.*) Plaintiff was eventually committed to the Howard R. Young Correctional Institution.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)).

The unnamed K-9 is an animal. A § 1983 claims require that a person deprive another of a federal right. *See Dye v. Wargo,* 253 F.3d 296, 303 (7th Cir. 2001) (Wood, J., dissenting) ("The majority hardly needs to belabor the point that, no matter how

much of an animal lover one may be, a dog at this time is not a 'person' amenable to a § 1983 suit[.]"). The unknown K-9 is improperly named as a defendant.

The complaint alleges that Sherkey and Malone tasered and clubbed Plaintiff while he was on the ground. (D.I. 1, complaint at ¶ 8.) With regard to Sherkey, the record reflects, and it is undisputed, that he did not arrive at the scene until Plaintiff was being transported to receive medical care. The record reflects no personal involvement by Sherkey during Plaintiff's arrest or that he took any action during that time. Nor could any jury find that Sherkey violated Plaintiff's constitutional rights.

Plaintiff named and failed to identify the unnamed officer defendants. As with Sherkey, there is no evidence of record that indicates personal involvement by any unnamed officers or that they violated Plaintiff's constitutional rights. Therefore, the court will grant Defendants' motion for summary judgment as to Sherkey, the unnamed K-9, and unnamed officers.

With regard to Malone, there is no evidence of record that a taser or club was used on Plaintiff. Instead, the record reflects that Plaintiff, who was non-compliant, was struck in the ribs by Malone when officers were attempting to restrain Plaintiff. Regardless, the evidence of record indicates that Malone's actions were objectively reasonable.

Claims against police for excessive use of force in the course of an arrest are analyzed under the objective reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1985). The reasonableness of the force used to effectuate an arrest is assessed with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect

6

poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Hence, summary judgment should be granted to Malone only if, as a matter of law, the record evidence would not support a reasonable jury finding that the force used by Malone was objectively unreasonable. *See Anderson*, 411 U.S. at 247-48.

It is undisputed that Malone struck Plaintiff in the ribs twice. There is no evidence of record that Plaintiff sustained any injuries as a result of Malone's actions. Rather, Plaintiff complains of the dog bites he sustained. The first factor considers the severity of the crime at issue. Plaintiff was placed under arrest for burglary, and he subsequently confessed to the crime. The second factor considers whether the suspect posed an immediate threat to the safety of the officers or others. Here, the officers were aware that ammunition had been taken from the residence that Plaintiff allegedly burgled. Moreover, Plaintiff was hiding under a blanket, refused to show both hands, and was non-compliant with police commands. Given the circumstances, a reasonable juror could not conclude from the evidence of record that Malone's actions were anything other than objectively reasonable under the circumstances. The third factor considers whether the suspect is actively resisting arrest or attempting to flee. It is undisputed that Plaintiff resisted arrest. Evaluating the factors based on review of the record in the light most favorable to Plaintiff, the Court finds that Malone's actions were objectively reasonable and that summary judgment is appropriate as to Malone.

Based upon the evidence of record, no reasonable jury could find for Plaintiff on any of his claims. Therefore, for the above reasons, the Court will grant Defendants' motion for summary judgment.

7

An appropriate order will be entered.